UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BIBIKOV,<br><br>Defendant. | Case No. 1:18-cr-00258-BLW<br><br>**MEMORANDUM DECISION &<br>ORDER RE: RULE 29 MOTION** |

## INTRODUCTION

Before the Court is Defendant David Bibikov's Motion for Judgment of Acquittal on Counts 1 and 20 of the Superseding Indictment. *See* Dkt. 1622. For the reasons explained below, the Court will deny the motion.

## RELEVANT BACKGROUND

Mr. Bibikov faced five charges at the retrial of this matter – two conspiracy charges and three substantive-offense charges. Count 1 alleged conspiracy to commit wire fraud. Count 20 alleged conspiracy to traffic in counterfeit goods, labels, or packaging. Counts 9 and 18 alleged that Mr. Bibikov committed wire and mail fraud by selling a counterfeit iPhone on Amazon on December 12, 2017. Count 28 alleged that Mr. Bibikov trafficked in counterfeit goods, labels or

MEMORANDUM DECISION & ORDER - 1

packaging in relation to a December 2, 2016 sale of counterfeit Apple chargers.[1]

At the close of evidence, Mr. Bibikov moved for a judgment of acquittal. The Court denied the motion, and the jury convicted Mr. Bibikov on all counts except Count 28. Mr. Bibikov now renews his motion for a judgment of acquittal on the conspiracy charges.

## LEGAL STANDARD

Rule 29 provides that after a jury returns a guilty verdict, a "court may set aside the verdict and enter an acquittal." Fed. R. Crim. P 29(c). A court will deny a Rule 29 motion for judgment of acquittal if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Charley*, 1 F.4th 637, 643 (9th Cir. 2021). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). "Second, ... the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id*. (*quoting Jackson*

---

[1] Count 28 had also alleged that Mr. Bibikov sold a counterfeit iPhone 5S on that date as well, but the Court dismissed that aspect of the charge. *See Superseding Indictment,* Dkt. 210, ¶ 34. The jury considered only whether Mr. Bibikov had sold counterfeit Apple chargers.

*v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201–02 (9th Cir. 2000). And a reviewing court "'may not usurp the role of the finder of fact by considering how [it] would have resolved the conflicts, made the inferences, or considered the evidence at trial.'" *United States v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (*quoting United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)).

## DISCUSSION

Mr. Bibikov challenges the evidence supporting his convictions on the conspiracy charges. To prove a conspiracy, the government must prove: 1) an agreement to accomplish an illegal objective; and 2) the intent to commit the underlying offense. *United States v. Mendoza,* 25 F. 4th 730, 736 (9th Cir. 2022) "Circumstantial evidence can suffice to prove a conspiracy." *Id.*

Mr. Bibikov's theory is that while there may be evidence that he sold counterfeit goods, there is no evidence that he conspired with anyone to do so. Rather, he says the evidence shows that he developed his own suppliers, that he was "doing his own thing," and the success of his cell phone businesses was not dependent upon the success of the larger group. Thus, he concludes, he did not join

any conspiracy. He concedes that he had some common interests with the defendants, and that he engaged in some similar practices – such as opening multiple businesses and taking similar actions as the others to avoid shutdowns of Amazon seller accounts. But he argues that these sorts of common practices and interests cannot support the conspiracy convictions.

In advancing these arguments, Mr. Bibikov relies heavily on the Ninth Circuit's recent decision in *United States v. Mendoza*, 25 F.4th 730, 736 (9th Cir. 2022). In that case, the Ninth Circuit vacated a defendant's conviction on a drug conspiracy charge, concluding that there was insufficient evidence to support the verdict.

*Mendoza,* however, is distinguishable. That case involved a street gang – the Cantas Ranas Organization – that engaged in extortion, drug trafficking, and other crimes. The government's theory was that Mendoza was a member of the gang and, more specifically, a member of the gang's drug-trafficking operation. Mendoza's theory was that although he had joined the gang as a teenager, he later left the gang and moved away, "taking with him only a lifelong addiction to methamphetamine and a series of gang-related tattoos." *Id.* at 734. At trial, the government produced only a smattering of evidence to show Mendoza was still involved in the gang, such as the fact that he still had gang tattoos and had sporadic contact with some gang members. As for drug sales, Mendoza had purchased

MEMORANDUM DECISION & ORDER - 4

methamphetamine from gang members on a few occasions, but there was "no evidence of repeated, large-quantity sales and barely any evidence linking Mendoza to future drug sales." *Id.* at 738. Mendoza said he had bought the methamphetamine for personal use.

Somewhat troublingly, the jury did not receive the "buyer-seller" instruction, which would have told them that a buyer-seller relationship alone is not sufficient evidence of a conspiracy. *See id.* at 742 n.12. After deliberating without such an instruction, the jury convicted Mendoza of on the conspiracy charge. *Id.* at 733.

Here, by contrast, the jury was instructed on the buyer-seller rule. Further, the government has pointed to what it describes as a "mountain" of evidence showing that Mr. Bibikov joined the conspiracy to traffic in counterfeit goods. *Response,* Dkt. 1628, at 10-11. A sampling of that evidence – as described in the government's response brief – follows:

- For several years – up through August 2018 when law enforcement arrested the defendants and executed search warrants – Mr. Bibikov operated out of what the parties refer to as the "small warehouse," which was near the large warehouse where Paul, Peter, and Tim Babichenko operated. *See id.* at 5 (citing Tr. Ex. 2010.A).

- Similar to other defendants, Mr. Bibikov opened and operated numerous businesses entities as part of an effort to evade Amazon shutdowns, which, in turn, would allow defendants to continue selling counterfeit products on online selling platforms such as Amazon. *Id.* at 3 (citing Tr. Exs. 1251-57, 1400, 1501-09).

- The defendants used similar methods of opening their businesses to

ensure that Amazon would not detect the "real operator" of the selling account. *Id.* at 5 (citing Tr. Exs. 4108, 2443, 2444).

- Mr. Bibikov shared one of these businesses – BuyNowCell – with defendant Tim Babichenko. *Id.* (citing Tr. Ex. 3216.26).

- Law enforcement collected outbound packages from BuyNowCell, which had shipped from the large warehouse. *Id.* at 9 (citing Tr. Ex. 2300 (documenting 14 BuyNowCell packages containing Apple and Samsung cellphones shipped from the Large Warehouse on August 21 and 22, 2018); Tr. Ex. 2304, at 8-11 (photographs of BuyNowCell packages collected during the package warrant); Tr. Ex. 3216.26 (chat between Tim Babichenko and David Bibikov wherein the password and account for BuyNowCell is shared); Tr. Ex. 2505, 2505A (fake authorization from Apple for "BuyNowCell" collected from Small Warehouse on August 22, 2018)).

- Various defendants, including Mr. Bibikov, submitted fraudulent invoices (listing each other's businesses as suppliers) to online selling platforms to prevent closure of their online selling businesses. *Id.* at 4 (citing Tr. Ex. 4017).

- Text messages extracted from a computer in Mr. Bibikov's office show that Mr. Bibikov relied on Paul Babichenko for supply. *Id.* at 8 (citing Tr. Exs. 3216.2, 3221.75, 3221.76).

- Text messages extracted from this same computer show that Mr. Bibikov coordinated with Tim, Paul, and Peter Babichenko "to share Amazon accounts and means of continued evasion from detection." *Id.*

- Text messages show that Mr. Bibikov "coordinated prices, logistics (such as shipping and inventory), and Amazon's termination of accounts. *Id.* (citing Trial Exhibits 3216.2, 3221.75, 3221.76).

- Documents seized from Mr. Bibikov's office included fraudulent invoices claiming MidStar (a company owned by Paul Babichenko) as an authorized Apple and Samsung seller, as well as a fabricated authorization from Apple and Samsung. *Id.* at 9 (citing Tr. Exs. 2510,

**MEMORANDUM DECISION & ORDER - 6**

2505, 2505A, 3221.77).

Mr. Bibikov has not offered any response to the government's recitation to (or interpretations of) this evidence. He did not file a reply brief. As such, the Court is not persuaded by his attempts to fit himself within the *Mendoza* holding. Not only are the *Mendoza* facts easily distinguishable, but Mr. Bibikov's view of conspiracy law is also too narrow. He has argued that the only way the government could prove a conspiracy is by proving that he sold product for another defendant. *See Motion,* Dkt. 1622, at 5. As he puts it, "the government must prove with sufficient evidence an agreement between David and his co-conspirators under which David would further distribute goods that he bought from Paul." *Id.*

But there are many ways to form a conspiracy – it doesn't necessarily have to involve a supplier-middleman-consumer structure. Rather, as noted above, the government simply had to prove an agreement to accomplish an illegal objective and the intent to commit the underlying offense. Thus, even if Mr. Bibikov developed his own suppliers, this would not prevent the jury from concluding that he had still agreed to with others to obtain and sell counterfeit cellphone products online. Further, in the context of supplier-middleman-consumer conspiracies, the Ninth Circuit has observed that "distinguishing between a conspiracy and a buyer-seller relationship requires a fact intensive and context-dependent inquiry that is not amenable to bright-line rules." *United States v. Moe*, 781 F.3d 1120, 1125 (9th

Cir. 2015). The court should "take into account all . . . the evidence supporting the alleged conspiracy and make a holistic assessment of whether the jury reached a reasonable verdict. *Id.* (quoting *United States v. Long,* 748 F.3d 322, 326 (7th Cir. 2014)). Here, after having reviewed the evidence supporting the alleged conspiracies, the Court is persuaded that the jury reached a reasonable verdict. Accordingly, the motion will be denied.

## ORDER

**IT IS ORDERED that** Defendant David Bibikov's Motion for Judgment of Acquittal on Counts 1 and 20 (Dkt. 1622) is **DENIED.**

DATED: January 17, 2023

B. Lynn Winmill
U.S. District Court Judge